# THOMAS C. CHAPPELL vs. MARY BALL CHAPPELL.

*Appeal—Divorce—Alimony and Counsel Fees—Enforcement of Order for Payment Thereof—Motion for Rehearing—Cross-Bill in Equity—Evidence—Removal of Cause to Federal Court.*

An appeal lies from an order directing alimony and counsel fees to be paid pending a suit for a divorce, *Code*, Art. 5, sec. 25, providing that an appeal may be taken from any order directing money to be paid except an order for payment to a receiver.

The general rule is that a wife has a right to demand maintenance and counsel fees from her husband pending a divorce proceeding, but the amount of the allowance is not committed solely to the discretion of the trial Court.

When a cause is remanded to the Court below for further proceedings, its jurisdiction to pass orders is not ousted by the fact that a motion for a reargument is pending in the Court of Appeals.

Statements made in an exception filed to an order of Court cannot be treated as competent evidence in the case of the facts so stated.

The filing of an appeal bond under *Code*, Art 5, sec. 28, does not operate to suspend, until the passage of a final decree on appeal, the enforcement of an order requiring the payment of counsel fees, suit money and alimony in a divorce case.

When an order directing the payment of alimony, etc., has not been obeyed, it should be enforced without its repetition by being incorporated in a new order to the same effect.

A cross-bill in equity is not a new suit, but is a defence, or a proceeding designed to procure a complete determination of the matter already in litigation.

A divorce proceeding cannot be removed to the Federal Court upon the application of the plaintiff, although the defendant filed a cross-bill under which the payment of alimony was ordered.

Appeals from six orders of the Circuit Court for Baltimore County.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE and BOYD, JJ.

*Thomas C. Chappell,* appellant, *in propria persona.*

*David Stewart,* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This record brings up six appeals. Three previous appeals between the same parties were disposed of during the October term of 1895 ; but no final decree has yet been reached in the cause. The record now before us contains a mass of utterly useless matter, repeated over and over again. The whole proceeding on the part of the appellant is so unusual, inartificial, tangled and confused as to lead to the irresistible inference that his object is purely vexation and delay—an effort to prevent, or to postpone as long as possible, a decision on the merits by the interposition of frivolous objections in every form that he can devise. He is conducting his own case ; and he has excepted, demurred and filed numerous motions covering the same ground ; and he has done all this, apparently, with a view to protract a litigation between him and his wife, that reflects the utmost discredit upon himself. If his dilatory, idle and unparalleled proceedings were to receive the sanction of any Court, that Court would be exposed to the severest criticism, for those proceedings are a reproach to the administration of justice. His numerous exceptions, demurrers and motions simply trifle with the patience and the toleration of the Court—they are without precedent in equity pleading and have no tendency whatever to aid in the ultimate determination of the issue really involved. A mixture of incoherent arguments, irrelevant statements, citations of authorities and quotations from statutes, both Federal and State, they certainly present the most remarkable productions ever brought to the notice of this Court ; and most probably no other tribunal has ever been called on to unravel or interpret their like before. As an end must be put to this utterly unjustifiable trifling with the machinery of justice, we proceed to dispose of these six appeals without further comment on the character of the procedure.

A brief statement of pertinent facts now will avoid the necessity of repetition later on.

On March 13th, 1895, the appellant filed a bill of com-

plaint in the Circuit Court for Baltimore County against his wife, the appellee, wherein he prayed for a decree divorcing the parties *a vinculo matrimonii* and also for a decree of nullity of the marriage. The charges of the bill need not be repeated. On the former appeals we took occasion to characterize them as " vindictive and vituperative to a remarkable degree." The bill prayed for an order of publication against the defendant, who was alleged to be a non-resident of the State of Maryland. On April the third the appellee appeared voluntarily to the proceeding and filed a petition asking that an order be passed requiring the appellant, her husband, to pay her alimony pending the suit, and also a reasonable counsel fee. Upon this petition there was an order *nisi* passed directing the appellant to pay to the appellee the sum of one hundred dollars per month in advance as alimony during the continuance of the contest; five hundred dollars for the expenses of the suit; and one thousand dollars for counsel fees. The petition was answered on April the sixteenth. Pending action on this petition and the answer thereto, Mrs. Chappell obtained, on May the eighth, 1895, leave to file a cross-bill, and on that day she filed her answer to the bill of complaint, and in the answer she incorporated the cross-bill, wherein she prayed for a divorce *a mensa et thoro.* On the 25th of April Mr. Chappell filed a motion asking leave to dismiss his bill of complaint, and this motion was set for hearing on May the eleventh. The motion was resisted on various grounds; and on June 15th leave was granted the plaintiff to dismiss his bill upon paying the costs and the further sum of two hundred and fifty dollars for counsel fees. On July the 26th the order *nisi* of April the third awarding one thousand dollars counsel fees, five hundred dollars suit money and one hundred dollars per month alimony was made final, *unless* Mr. Chappell should on or before August the tenth dismiss his bill for divorce and pay the taxed costs and the two hundred and fifty dollars for counsel fees as provided in the order of June 15th. The taxed costs were paid, but the counsel fee was not, and the

bill was not dismissed.    From these various orders appeals were taken to this Court and after argument were dismissed on January 8th, 1896.   Thereupon writs of error were sued out and under them the record was transmitted to the Supreme Court.   Upon motion there made these were, on February 15th, 1897, also dismissed.   On January the 16th, 1896, ten days after the appeals just referred to had been dismissed by this Court, an order was passed by the Circuit Court for Baltimore County, making the orders of April 3rd and July 26th, 1895, liens on Mr. Chappell's property and further directing him to satisfy the arrearages of alimony amounting to one thousand dollars, the five hundred dollars suit money and the one thousand dollars for counsel fees, within ten days after a service of a copy of the order upon him or his solicitor.   On July the 23rd Mr. Chappell filed what he styles exceptions to this order and an appeal to this Court from the order itself.   On the day following he filed other exceptions to the same order.   These exceptions are, to say the least, most remarkable.   They insist that the Circuit Court had no jurisdiction to pass the order of January the 16th because, *first*, though this Court had dismissed his former appeals he had made a motion for a reargument, the pendency of which motion rendered any action by the Court below "*ultra vires*" as he styles it, and deprived the lower Court of authority to take any action until the motion for a reargument had been disposed of; and because, *secondly*, at the time he, Chappell, filed the bill against his wife for a divorce there was pending between the same parties a suit, for nullity of the marriage, in the United States Circuit Court for the District of Massachusetts; and because, *thirdly*, both he and his wife were non-residents of Maryland and not within the jurisdiction of the Court. On the same day he entered another appeal from the order of January the 16th.

There is not a particle of evidence to support or sustain the averments of fact upon which reliance is placed in these exceptions; but the order of January the 16th, though not

a final decree determining the ultimate issue to be decided, is an order directing money to be paid and is, therefore, within the terms of sec. 25 of Art. 5 of the Code.

There can be no doubt whatever that a Court of Equity has power to allow alimony to a wife pending a suit for divorce ; nor can its authority to require the husband to pay her counsel fees and the costs of the proceeding be disputed. These are not now open questions in Maryland. The amount allowed is regulated by the circumstances of each case and is usually said to rest in the Chancellor's sound discretion. But it by no means follows that this discretion is never open to review. So far from this being so, it has been held on appeal from the final decree that the *amount* allowed for alimony may be curtailed (*Ricketts* v. *Ricketts*, 4 Gill, 106), and where an allowance was refused upon an application made to the lower Court after final decree and after the record had been transmitted to this Court on an appeal from the final decree, it was held that an appeal would lie from such refusal. *Rohrback* v. *Rohrback*, 75 Md. 317. It is not perceived how, if an appeal will lie from an order refusing to allow alimony, none can be entertained from an improvident order making such an allowance. In the case of *Hayward* v. *Hayward* 77 Md. (unreported cases) 26 Atl. Rep. 357, the appeals were dismissed because there had been no final action on *nisi* orders requiring the husband to show cause why counsel fees and alimony pending the suit should not be allowed—the appeals were really taken from *nisi* orders. In disposing of the cases it was said : " Until the Circuit Court finally acts upon the application for counsel fees and alimony, there is nothing from which an appeal can be taken." Because there was no final action the appeals were dismissed, but they were not dismissed because no appeal could have been entertained had the *nisi* orders been made absolute. Certain it is, an order to pay alimony and an order to pay counsel fees are orders to pay money, and from an order to pay money (other than an order to pay money to a receiver) the 25th sec. of Art. 5

of the Code, in express terms allows an appeal. It cannot be successfully contended than an order for the payment of alimony or for the payment of counsel fees in divorce proceedings, forms an exception to the broad language of the statute. The explicit terms of the statute negative such a contention. There *is* an exception named in the section, and but *one* exception, and that is an order for the payment of money to a receiver. From *such* an order no appeal will lie. This one exception of necessity excludes the introduction of any other by mere interpretation. No better reason can be suggested for excluding from the terms of the Code an order requiring alimony and counsel fees to be paid, than for the exclusion of any other or different order for the payment of money. Nor can any valid reason be named why such orders should be irreviewable that would not, with equal force, apply to many others. Whilst the wife, generally speaking, undoubtedly has the right to be maintained and to be furnished with the aid of counsel by the husband and from his purse during the litigation, still the *amount* of the allowance ought not to be solely committed to the discretion of the inferior Court. An error against the husband in such an order might work as serious an injury to him as could possibly result to the wife from the brief delay incident to a review of the order on appeal. Prior to the passage of various statutes restricting the right of appeal in chancery proceedings an appeal could be taken from any interlocutory decree or order. *Gover* v. *Hall*, 3 H. & J. 43. By the Act of 1830, ch. 185, appeals were disallowed from all decrees other than those which were final, or in the nature of final decrees ; but the Act of 1841, ch. 11 (which is incorporated in sec. 25 of Art. 5 of the Code) modified the Act of 1830 and gave an immediate appeal from an order directing the payment of money unless such payment was required to be made to a receiver. This provision has been the law of Maryland since 1841, and whilst no appeal involving alimony and counsel fees in divorce proceedings has arisen under it, there can be no good reason assigned for

excluding from the right of appeal specifically given from orders for the payment of money, such orders as direct the payment of alimony and counsel fees in a cause like this.

The grounds upon which the propriety of the order of January 16th, 1896, is assailed are untenable. The pendency of the motion for a reargument of the previous appeals did not oust the jurisdiction of the Circuit Court for Baltimore County. *Rohrback* v. *Rohrback, supra.* There is not a particle of evidence adduced to show that the parties in the cause were non-residents, much less that they were not citizens of the State when the order was passed. In the bill of complaint filed by Mr. Chappell he asserts that he is a resident of Baltimore County and to this bill he made affirmation. Whilst an original proceeding to recover alimony will not be entertained by the Courts of this State if both the parties are non-residents (*Keerl* v. *Keerl,* 34 Md. 21), this proceeding is not such a case. The appellant by an *ex parte* affidavit appended to a written exception taken to the order of January 16th cannot, under our Chancery practice, avail of the statements in the exception as evidence. Even if this were a case where the doctrine of *Keerl* v. *Keerl* would be applicable, evidence should have been produced in the regular way to support the averment of non-residence. This has not been done and cannot now be permitted. The jurisdiction of the lower Court was invoked by Chappell in the first instance, and he has adduced no evidence tending to prove the existence of a state of facts which would deprive the Circuit Court of the right to proceed to a final decree in the cause. The same remark applies to each and all of the other averments of his exceptions filed January 23rd and 24th—there is not a shred of evidence to sustain them; and there is consequently nothing in the record to indicate, either, that the Circuit Court had no jurisdiction to pass the order of January the 16th, or, that in passing it there was any error either of fact or of law.

So far then as the appeals relate to this order—the first and the second appeals—the order is affirmed; and cannot

again be questioned. The former appeals from the prior orders were dismissed because those orders were then conditional—they were in the alternative and not final.

After the order of January the 16th had been appealed from, an attachment for contempt was issued against Mr. Chappell, but was returned *non est.* Then an execution was issued to enforce the payment of the alimony, suit money and counsel fees, and a levy thereunder was made on the appellant's property which was advertised for sale by the sheriff. On February the 27th, 1897, another petition was filed by the appellee praying for an allowance of additional counsel fees for services rendered by her counsel in the Court of Appeals and in the Supreme Court, and a *nisi* order dated the same day was signed. On the ninth of March the appellant filed objections to this order ; and in those objections he goes over the same ground which he had relied on in his exceptions of January the 24th to the order of January the 16th ; and in addition he relies on the rather novel defence that he ought not to be required to pay the counsel fees earned by his wife's solicitors in defending her against the serious charges that he himself preferred, because *he* had improvidently filed the original bill of March 13, 1895, against her. These objections contain various quotations from legal text-books and references to adjudged cases. On the same day Chappell filed a demurrer to the petition of February the 27, and relied on some of the grounds set forth in the objections filed on the same day, and he further insisted that the proceeding was not a suit for divorce but for nullity—though he himself had filed the bill that prayed in express terms for the passage of a decree *divorcing* the parties *a vinculo matrimonii.* On April the 8th he filed a motion to quash the orders of January the 16th, 1896, and of February the 27th, 1897, and reiterated his reasons set forth in the objections filed March the 9th. On the same day he filed a motion to quash the attachment for contempt and the execution previously issued. On the tenth of April he filed a statement that he intended to dis-

pute on appeal various orders, including those of January 16th, 1896, and February 27th, 1897; and accompanying the statement he filed an appeal bond under sec. 28 of Art. 5 of the Code—claiming that the filing of the bond suspended the operation of all the antecedent orders requiring him to pay counsel fees, suit money and alimony. On the twelfth of April the Court decided that sec. 28 of Art. 5 of the Code did not operate to stay the order of January the 16th, 1896, or any of the other orders passed to enforce it. On April the 15th he filed an exception to this decision and on the same day a motion to vacate it. On the same day he filed another long paper called exceptions to all previous orders, including the one embodying the decision of April the twelfth. On April the 24th he filed an equally long and rambling paper called exceptions to the order of April the twelfth; and on the 24th he prayed an appeal from that order. On the same day he entered an appeal from an order of April the 14th, though that order was only a *nisi* order and was not made final until the 26th of the same month.

As well as we can determine from this mass of incongruous matter the question that is intended to be raised by the appeal from the order of April the twelfth is this: Does the filing of an appeal bond under sec. 28 of Art. 5 of the Code operate to suspend the execution or enforcement of an order requiring the payment of counsel fees, suit money and alimony in a divorce case, until the passage of a final decree upon the merits and a review of that decree by this Court on appeal? The section on which reliance is placed reads as follows: " In case a party intends, on an appeal from the final decree or order in the case, to dispute any previous order, and desires to stay the operation of such order, he shall state his intention to dispute the same, in writing, to be filed with the Clerk, and shall give bond in such penalty as the Court may prescribe, with surety to be approved by the Court or the Clerk, to indemnify the other party from all loss and injury which such party may sustain by reason

of the staying of the operation of such order." This pro-
vision of the Code is taken from the Act of 1830, ch. 185,
sec. 1, and obviously had no relation, at the time of its adop-
tion, to proceedings for divorce in chancery ; because it was
not until the Act of 1841, ch. 262 was passed that Courts
of Equity in Maryland acquired or possessed any jurisdic-
tion to grant a divorce at all. *Brown* v. *Brown*, 5 Gill, 249.
Originally the Act of 1830 had, and could have had, no
application to divorce proceedings ; and from the nature of
those proceedings and the right which the wife has to be
furnished by the husband with the means of conducting her
case, it would seem to be quite clear that if the scope which
the appellant contends the 28th sec. of Art. 5 of the Code
has, were given to it, the very *means* which the law con-
templates the wife shall have to conduct her case, would
practically be denied her ; because under the section just
transcribed, the giving of a bond and the filing of a notice
that on appeal from the final decree an order for the pay-
ment of alimony and counsel fees would be contested, would
tie up all allowance to the wife until after a final decree had
been passed and had been reviewed on appeal. This pro-
cedure would effectively preclude the wife from prosecuting
or defending her cause, because it would absolutely deprive
her, during the progress of the litigation, of the requisite
money to support herself and to defray the costs and ex-
penses of the controversy. In many instances it might
leave her utterly destitue of ability to contest or to refute
the most serious charges against her. Manifestly it was
never the intention of the Legislature to sanction such results
and we are unwilling to give to the statute a broader appli-
cation than it had when adopted, especially when by stretch-
ing its original scope grave hardships and seriously inequit-
able consequences, amounting in some instances to a practical
denial of justice, would inevitably follow. We think the
Court below was right in holding that the notice of an in-
tention to dispute the order and the bond given therewith
did not suspend the operation of the order of April the

twelfth, or of any other antecedent or subsequent order. And we hold that these orders were not suspended because they are not such orders as sec. 28 of Art. 5 of the Code includes. We shall therefore affirm the order complained of in the third appeal.

On April the 14th the Circuit Court passed another order directing Mr. Chappell to pay the sum of twenty-five hundred dollars for twenty-five months alimony, five hundred dollars as suit money, and one thousand dollars for counsel fees under the orders previously signed, less such sum as might be credited as realized by the sale on April the twelfth under the execution already alluded to. This was followed by a variety of motions, exceptions and demurrers, consisting chiefly of a repetition of those previously filed. There is no evidence adduced to support the averments of these papers, and what we have said in disposing of the first and second appeals applies to this one also. For the same reasons this order will be affirmed. We are at a loss to see the necessity for such continuous repetition of practically the same orders. Much of the useless matter now in the record could have been kept out had there not been this needless multiplication of orders. Those which had been passed ought to have been enforced without reiterating them ; and if new ones were required for additional alimony and counsel fees, they should have been passed without reference to, and without incorporating, the prior ones.

On May the eleventh, the Court passed an order directing the six hundred dollars additional counsel fees to be paid and at the same time overruling all exceptions and demurrers previously filed ; and Mr. Chappell was required to answer, plead or demur to the cross-bill within thirty days. From this order the fifth appeal was taken. Nothing has been shown in any of the numerous papers filed, why this order was erroneous ; and it will be affirmed.

The sixth and last appeal was taken from an order of July 17th, 1897, refusing to transmit, on the application of the appellant, the record to the United States Circuit Court

for the District of Maryland, for trial there.    There was no error in passing this order.  The Federal Courts have no jurisdiction in divorce cases.   *Barber* v. *Barber*, 21 How. 582. It is not deemed necessary to review at length the several Acts of Congress relating to the removal of cases from the State to the Federal Courts.   Various statutes, beginning with the Judiciary Act of September 24th, 1789, have been adopted on this subject.   The Act of July 27th, 1866; the Acts of March 2nd, 1867 ; March 3rd, 1875, and March 3rd, 1887, as re-enacted August 13th, 1888, all had reference to such removals.   Some of the earlier of these have been repealed.   We are concerned alone with the last, which reversed the tendency of the prior legislation and greatly narrowed and restricted the right of removal.   The Act of 1867 for the first time gave the *plaintiff* a right to remove ; but now the right is confined under the Act of 1887 to the *defendant.*   The first section of the last named Act raised the jurisdictional limit prescribed for the United States Circuit Courts in ordinary cases to an amount exceeding the sum or value of two thousand dollars, instead of five hundred dollars as it had formerly been ; and the second section designates the instances in which a cause pending in a State Court may be removed to the Federal Courts.   The third of these instances provides for such a removal when in any suit mentioned in the section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the *defendants* actually interested in that controversy may remove the suit.   And it is under this provision that the removal was applied for in this case.   By the express terms of the Act of Congress of 1887, as re-enacted in 1888, the removal can only be had upon the application of the *defendant ;* and so the Supreme Court has decided.   "Under the Act of Congress of March 3rd, 1887, (24 *Stat. at L.* 552, ch. 373), it is the defendant or defendants who are non-residents of the State in which the action is pending, who may remove the same into the Circuit Court

of the United States, for the proper district." *Martin* v. *Snyder,* 148 U. S. 663. And this can only be done when the matter in dispute exceeds the sum or value of two thou- sand dollars. *Ex parte The Penna. Co.* 137 U. S. 451. No suit, however important it may be, can be removed under this statute unless it involves a right or claim capable of pecuniary estimation (*Kurtz* v. *Moffitt,* 115 U. S. 487); and the amount in dispute must be determined from the declaration, petition or bill of complaint. *Gordon* v. *Longest,* 16 Pet. 97. Now, the appellant does not come within the statute in any particular. He is not the *defendant* in the suit or proceeding. He is the *plaintiff,* and the bill of com- plaint was filed by him, not to recover money or property or other thing of value, but solely to procure a decree divorcing him from his wife. The auxiliary proceedings respecting alimony and counsel fees and costs and growing out of the original suit, are not removable (*First Nat. Bk.* v. *Turnbull,* 16 Wall. 190; *Barrow* v. *Hunlin,* 99 U. S. 80); nor will such auxiliary proceedings convert the orig- inal bill into a proceeding involving a matter in dispute ex- ceeding the sum or value of two thousand dollars. The bill of complaint does not, nor could it, pray for alimony, because it was filed *by* the husband *against* the wife. The recovery of alimony was no part of the relief prayed for. In fact no recovery of money or value was sought at all; and it was consequently not a proceeding where any sum of money whatever was involved. The applications for ali- mony and counsel fees grew out of the original proceedings but were not the things sought to be recovered by it—they were purely incidental and auxiliary. But even had the bill been one where alimony could have been and was prayed for, that fact would not have authorized the removal of the case. *Bowman* v. *Bowman,* 30 Fed. Rep. 849. The cross- bill does not change the situation of the parties, or make Mr. Chappell, who as plaintiff filed the original bill, an actual defendant. A cross-bill is generally considered as a defence, or as a proceeding to procure a complete determi-

nation of a matter already in litigation in the Court. *Hooper* v. *Cent. Trust Co.*, 81 Md. 576 ; *Story Eq. Pl.*, sec. 399. It is not a new suit.    *Cross* v. *De Valle*, 68 U. S. 5 ; *Pierce* v. *Chace*, 108 Mass. 260.

As this is a case that cannot under the Act of Congress be removed to the United States Circuit Court, the mere filing of a motion for the removal did not operate to transfer the record.    To accomplish a transfer the suit must be one that *can be* removed, and the petition must show a right in the petitioner to demand a removal.    *Crehose* v. *Ohio & M. R. Co.*, 131 U. S. 240.    There was no error committed in passing the order appealed from in the sixth case.

All the orders appealed from will be and hereby are affirmed with costs above and below and the record is remanded to the Court below that the cause may proceed to a final decree upon its merits.

> *Orders affirmed with costs above and below and cause remanded.*